## Vital Statistics Records

RUTTER, Deputy Attorney General, February 8, 1944.—You have requested us to advise you concerning certain provisions of the Uniform Vital Statistics Act of May 21, 1943, P. L. 414, 35 PS §505.1 et seq. Your questions are as follow:

1. Does section 20(2) of said act, in view of section 21 of the Act of June 7, 1915, P. L. 900, as last amended by the Act of April 22, 1937, P. L. 399, 35 PS §471, prohibit the department from supplying a certified copy of a record of an illegitimate birth to anyone except upon order of court?

2. Does said act repeal that portion of section 2 of the Act of July 16, 1941, P. L. 383, 35 PS §482, which provides that a fee of $2.50 shall be paid to the Bureau of Vital Statistics for the filing of a delayed birth certificate?

3. May the Department of Health accept as satisfactory proof for the filing of a delayed birth certificate information contained in a certificate of adoption filed by a clerk of court with the department, as required by section 32 of the Uniform Vital Statistics Act? In the event our answer to this question is in the affirmative you desire to be advised whether the department may accept certificates of adoption which occurred prior to September 1, 1943, for the same purpose, September 1, 1943, being the effective date of the Uniform Vital Statistics Act.

We will answer the foregoing questions under their respective numbers.

1. Section 21 of the Act of June 7, 1915, P. L. 900, as amended, supra, provides, among other things:

". . . That no certified copy of an illegitimate birth record, nor any information relative thereto, except as herein otherwise provided, shall be furnished to any person other than the illegitimate child or the mother of the child, or upon an order of a court of competent jurisdiction."

Section 20(2) of the Uniform Vital Statistics Act is as follows:

"Disclosure of illegitimacy of birth or of information from which it can be ascertained may be made only upon order of a court, in a case where such information is necessary for the determination of personal or property rights, and then only for such purpose."

The ostensible purpose of the Uniform Vital Statistics Act is to establish an all-inclusive system for the recordation and preservation of data relating to vital statistics as defined in the act. The avowed purpose of all uniform legislation, such as this act, is to make uniform the laws of the several States enacting such legislation. The Uniform Vital Statistics Act was approved by the National Conference of Commissioners on Uniform State Laws in 1942. It is a revision of the Model Vital Statistics Act promulgated in 1940, which was redesignated a Uniform Act and tentatively approved by the commissioners in 1941. As of 1941 the act had been adopted in three other States. We emphasize the twofold purpose of the act, namely, to supply in one piece of legislation the machinery to deal completely with vital statistics, and, secondly, as rapidly as possible, to enact such legislation uniformly in all States. In construing the provisions of the act, or their possible conflict with those of other and prior statutes, or in comparing the provisions of the act with those of similar acts passed in other States, the aforesaid desiderata of uniformity and completeness should be kept in mind.

For our specific guidance in construing statutes, and in particular the inconsistent statutory provisions here-

inbefore quoted and cited, we look to the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §501 et seq. Section 57 of said act, 46 PS §557, is as follows:

"Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."

While it is true that laws or parts of laws are in pari materia when they relate to the same persons or things or to the same class of persons or things, and are to be construed together, if possible (Statutory Construction Act, sec. 62, 46 PS §562), the treatment accorded such statutes, insofar as revisions and codifications of laws upon a particular subject are concerned, is somewhat different. Section 91 of the Statutory Construction Act, 46 PS §591, is as follows:

"Whenever a law purports to be a revision of all laws upon a particular subject, or sets up a general or exclusive system covering the entire subject matter of a former law and is intended as a substitute for such former law, such law shall be construed to repeal all former laws upon the same subject.

"Whenever a general law purports to establish a uniform and mandatory system covering a class of subjects, such law shall be construed to repeal pre-existing local or special laws on the same class of subjects.

"In all other cases, a later law shall not be construed to repeal an earlier law unless the two laws be irreconcilable."

The Uniform Vital Statistics Act purports to be a revision of the laws on the subject it deals with, sets up a general and exclusive system covering this subject, is intended to be a substitute for prior legislation relating thereto, and should, therefore, be construed to repeal former laws upon the same subject, especially if the former are inconsistent with the act.

It would be easy to conclude that section 20(2) of the Uniform Vital Statistics Act is in pari materia

with the portion hereinbefore quoted of section 21 of the Act of June 7, 1915, as indeed it is, and that the two should be construed together, *were it not for the fact that the uniform act is a general revision of the laws relating to vital statistics*. It is, therefore, our conclusion that section 20(2) of the Uniform Vital Statistics Act repeals and supersedes that portion of the Act of 1915 referred to.

It follows that the department may disclose illegitimacy of birth, or information thereof, only in accordance with section 20(2) of the Uniform Vital Statistics Act.

2. The Act of July 16, 1941, P. L. 383, 35 PS §481 et seq., provided for the filing of data with the Department of Health for the recordation of births of persons born in this Commonwealth, records of whose births were not already recorded. By popular usage such records have come to be called delayed birth records, and certificates thereof issued by the department, delayed birth certificates. The entire act is devoted to this subject. A fee of $2.50 is required by the act to be paid for such registration.

The Uniform Vital Statistics Act also provides for delayed or altered certificates of birth in sections 17 to 19, inclusive. No fee is required to file such delayed or altered certificates under the uniform act, just as no fee is required to file an ordinary record of birth. For the reasons hereinbefore advanced, a fee may not be charged after September 1, 1943, for filing a record of a birth not theretofore recorded nor for filing data for the purpose of altering a birth already recorded, any more than for filing the material necessary to establish an ordinary birth record. We think the Uniform Vital Statistics Act repealed the Act of July 16, 1941, P. L. 383.

3. According to section 17 of the Uniform Vital Statistics Act a person born in this State may file or amend a certificate after the time prescribed by the

act upon submitting such proof as shall be required by the department. You inquire whether the department may file or amend a certificate by accepting as proof of the data required the information contained in a certificate of adoption filed with the department by a clerk of court, which filing is required by section 32 of the act. First of all, the amount and nature of the proof of such data are prescribed by the department itself. Whether the data contained in a certificate of adoption would fulfil the requirements set up by the department is, of course, a matter for the department to decide. We see no reason why, if the department is satisfied with the proof offered by way of a certificate of adoption, it cannot file or amend a birth record.

Since we have answered this question in the affirmative, as qualified above, you desire to know whether you may accept the data from certificates of adoption which occurred prior to September 1, 1943, for the purpose of filing or amending records of birth, September 1, 1943, being the effective date of the Uniform Vital Statistics Act. We see no reason why you should not. To do so would not be to make the uniform act retroactive; see Statutory Construction Act, sec. 56, 46 PS §556; and what you would be doing would be pursuant to the provisions of the uniform act and after its effective date. You would simply be recording events which occurred prior to the time the act became effective, but doing so in accord with the act.

It is our opinion, therefore, and you are accordingly advised:

1. That the Department of Health may disclose illegitimacy of birth, or information from which illegitimacy of birth can be ascertained, only in accordance with the provisions of section 20 of the Uniform Vital Statistics Act.

2. No fee may be charged by the Department of Health for the filing of a delayed birth certificate after September 1, 1943.

3. The Department of Health may accept as satisfactory proof for the filing of a delayed birth certificate information contained in a certificate of adoption filed by a clerk of court pursuant to section 32 of the Uniform Vital Statistics Act in the event the department is of opinion that such proof meets its requirements, and this regardless of whether the adoptions which are certified to by clerks of courts occurred before or after September 1, 1943.

---

RUTTER, Deputy Attorney General, March 8, 1944.— We have been requested to review our formal opinion no. 485 addressed to you February 8, 1944, with respect to our first conclusion therein. This conclusion was as follows:

"1. That the Department of Health may disclose illegitimacy of birth, or information from which illegitimacy of birth can be ascertained, only in accordance with the provisions of section 20 of the Uniform Vital Statistics Act."

Apparently you have construed our opinion to mean that the Department of Health may disclose illegitimacy of birth, or information from which such illegitimacy can be ascertained, only upon order of a court. We did not mean so to hold by what we said in our opinion. Section 20(3) of the Uniform Vital Statistics Act of May 21, 1943, P. L. 414, provides that the department shall not permit inspection of records or issue certified copies of certificates unless it is satisfied that the applicant therefor has a direct interest in the matter recorded and that the information is necessary for the determination of personal or property rights. It is further provided that any decision on this subject by the department shall be reviewable by a court.

The same section of the act, in subsection (2), provides that disclosure of illegitimacy of birth or information from which it can be ascertained may be made

only upon order of a court in a case where such information is necessary for the determination of personal or property rights, and then only for such purpose.

It seems to us that the department has the authority to permit inspection of records relating to illegitimacy, and to issue certified copies of certificates thereof, as it has heretofore done, provided it is satisfied that the applicant has a direct interest in the matter recorded and that the information is necessary for the determination of personal or property rights. At once we come to the question of who might be considered to have a direct interest. We have no hesitation in concluding that such a person would be either the mother of the child or the child itself. Certainly no other individual could have a more direct or personal interest in the matter than the two mentioned. And, by "mother", we mean the natural mother of an illegitimate child. In cases of illegitimates having been legitimized by adoption or otherwise, the procedure would be the same as that for any other legitimate.

We believe that subsection (2) of section 20 of the act, relating to an order of court, was inserted by the legislature to cover all cases other than those wherein the applicant is the mother of the child or the child itself. We do not believe the word "case", used in subsection (2), means a case in the technical sense of a proceeding in a court between litigants.

We accordingly advise you that the Department of Health may, under the Uniform Vital Statistics Act, disclose illegitimacy of birth, or information from which it can be ascertained, either to the mother of an illegitimate child or to the child itself, but to no other person. If, however, an order of court is presented to the department entitling any person other than the illegitimate himself or his mother to obtain such information, then, of course, the department should comply with such order.